1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT

8 DISTRICT OF OREGON

9 PORTLAND DIVISION

10

11

12 JONATHAN HOLLANDER,                          No. 3:11-cv-01200-HU

13          Plaintiff,                          **OPINION AND ORDER**

14     v.

15 RAINIER SCHOOL DISTRICT,

16          Defendant.

17 _____

18 Jonathan Hollander
   jehollander@gmail.com
19 5327 SE 77th Ave.
   Portland, OR 97206
20 Telephone: (503) 308-7056

21     Plaintiff Pro Se

22 Steven A. Kraemer
   sak@hartwagner.com
23 Leslie A. Edenhofer
   lae@hartwagner.com
24 HART WAGNER LLP
   1000 SW Broadway, Twentieth Floor
25 Portland, OR 97205
   Telephone: (503) 222-4499
26 Facsimile: (503) 222-2301

27     Attorneys for Defendant
       Rainier School District
28

Page 1 - OPINION AND ORDER

HUBEL, Magistrate Judge:

This matter comes before the Court on (1) Plaintiff Jonathan Hollander's motion, pursuant to Federal Rule of Civil Procedure ("Rule") 30(d)(3), to limit or terminate his deposition; (2) Defendant Rainier School District's ("Defendant") motion, pursuant to Rule 6(b)(1), to enlarge the time in which to respond to Plaintiff's pending motion for summary judgment; and (3) Defendant's motion, pursuant to Rules 37(b), 37(d) and 41(b), to dismiss Plaintiff's second amended complaint for failure to prosecute, failure to comply with a court order, and failure to attend a deposition.   The parties have given full consent to adjudication of the case by a magistrate judge pursuant to 28 U.S.C. § 636(c).   For the reasons that follow, Plaintiff's motion (Docket No. 69) to limit or terminate his deposition is denied, Defendant's motion (Docket No. 71) to enlarge the time in which to respond to Plaintiff's motion for summary judgment is granted, and Defendant's motion (Docket No. 75) to dismiss Plaintiff's second amended complaint is stayed.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff brought this action against Defendant, alleging violations of 42 U.S.C. § 1983, the Fourteenth Amendment and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as well as state law claims for defamation and intentional and negligent infliction of emotional distress.   In an Opinion and Order dated March 22, 2013, the Court granted Defendant's motion to dismiss Plaintiff's state law claims and Rehabilitation Act claim(s), with leave to replead.   On April 22, 2013, Plaintiff filed a second amended complaint, alleging violations of § 1983, the Fourteenth

Page 2 - OPINION AND ORDER

Amendment, and § 504 of the Rehabilitation Act.    Presumably,
Plaintiff's state law claims were excluded because he could not
allege, in good faith, timely tort claim notice.

On June 11, 2013, the Court sent Plaintiff a summary judgment
advice notice.    The following month, on July 15, 2013, Plaintiff
filed a motion for summary judgment pursuant to Rule 56(c).    On
July 27, 2013, Defendant filed a motion for an extension of time in
which to respond to Plaintiff's motion for summary judgment due to
out-of-state travel plans.    Three days later, on July 30, 2013,
Defendant sent a letter notifying the Court and Plaintiff of
"discovery issues" it planned on discussing at the hearing on its
motion for an extension of time.    Those issues included the
adequacy of Plaintiff's responses to Defendant's interrogatories
and requests for production, as well as Plaintiff's refusal to sit
for a deposition.

On August 2, 2013, a hearing was held to discuss, among other
things, the aforementioned discovery issues and Defendant's motion
for an extension of time.  As relevant to the instant motions, the
Court ordered Plaintiff to: (1) sit for deposition at the law
offices of Hart Wagner LLP in Portland, Oregon, at 8:30 a.m., on
August 7, 2013; (2) produce all records substantiating any other
expenses, economic or special damages, for which Plaintiff contends
Defendant is liable for the period of January 1, 2010, through the
present (*e.g.*, the period for which Plaintiff claims damages); and
(3) all records relating to any counseling or psychological therapy
of any type sought by Plaintiff for the period of January 1, 2008,

through the present.   (Def.'s First Req. Produc. Docs. at 3; Hr'g Tr. 16:12-18:19, 54:8-55:22, Aug. 2, 2013.)

The Court also set a deadline of August 30, 2013 for Defendant to respond to Plaintiff's motion for summary judgment.   The Court's somewhat expedited response deadline was based on Defendant's counsel's representation that he did not need Plaintiff's medical records, or testimony from Plaintiff regarding those records, in order to respond to the pending motion for summary judgment.   (Hr'g 105:14-18) ("THE COURT: Mr. Kraemer, my intent will be, since you don't need the medical records portion of the deposition to respond to the summary judgment and you'll take the deposition on the 7th, I would be looking at something like the 23rd or 30th of August for your response to the summary judgment motion.   Can you make that? MR. KRAEMER: Yes, Your Honor.   THE COURT: Which date do you want? MR. KRAEMER: 30th, please.")

As stated on the record, Plaintiff's medical records were to be produced subject to a protective order prepared by Defendant's counsel "in the form or format of the sample protective orders in [the District of Oregon's] local rules."[1]   (Hr'g Tr. 21:13-15.) Plaintiff indicated that his preference was to gather the records on his own and be reimbursed by Defendant, as opposed to providing Defendant's counsel with a release in order to obtain the records from his medical providers.   Plaintiff also stated that he would provide Defendant with his medical records prior to his deposition:

---

[1] The Court did not explicitly require Defendant to have the protective order in place prior to Plaintiff producing his medical records.

Page 4 - OPINION AND ORDER

MR. HOLLANDER: Your Honor, I have the records for them. There's just several thousand pages.

THE COURT: You have them already?

MR. HOLLANDER: Yes, sir. I was looking online when we were talking. My apologies. It's modern technology. The hospital does everything online. They don't fill out a paper prescription anymore. So according to [Oregon] Health Science University, they have my entire health record back [to] 1997 -- all -- the many thousand of pages of it. I just see a lot of zeros.

THE COURT: Okay. So all of those records are in one place, then, and you still have the issue about there was a medical provider in Australia . . . as well, so that --

MR. HOLLANDER: Which would apply to medication. As far as mental health records, everything is available in the state of Oregon, Your Honor.

THE COURT: Well, you need to get those records to them before -- before the deposition, and that doesn't mean give them 10,000 pages of medical records at 8:30 a.m. Wednesday [August 7th] and expect they're going to depose you about them then. It means get the records -- if they're as available as you say, find a way to get them to Mr. Kraemer's office today.

MR. HOLLANDER: It can't be today, but it will be very, very soon, Your Honor.

THE COURT: Alright. Well, show up at 8:30 and you'll be done at 2:15. If there's problems, get a hold of me and we'll talk about where we go from there. Mr. Kraemer, I'm not foreclosing a follow-up session, because I don't know when you're going to get these records and what the adequacy of the time to review them is before the deposition. I would hope that you won't need to reconvene the deposition given the difficulty getting it, but, if you do, you know where I am to ask for permission to do that.

(Hr'g Tr. 103:19-105:9.)

On August 7, 2013, Plaintiff appeared for his deposition at the law offices of Hart Wagner without ever providing Defendant's counsel with his medical records. It quickly became apparent that Plaintiff had little interest in cooperating with Defendant's

Page 5 - OPINION AND ORDER

1  counsel.    For    example,    Defendant's    counsel    began    by    asking

2  Plaintiff about his employment history and the following back-and-

3  forth ensued:

4       Q.    Are you employed?

5       A.    No.

6       Q.    When was the last time you had a job?

7       A.    2006.

8       Q.    What did you do then?

9       A.    I was in the military.

10      Q.    What branch?

11      A.    Navy.

12      Q.    What did you do?

13      A.    This has been discussed.    Can we move on, please?

14      Q.    What did you do?

15      A.    This has been discussed.    Can we move on, please?

16      Q.    I'm asking you --

17      A.    I object -- I object to this line of questioning
18            because the judge last week already discussed this
             and said move on.

19      Q.    So you're not going to tell me what you did in the
20            Navy?

20      A.    It's all been on paper several times, and it has
21            absolutely nothing to do with this case.

22      Q.    So are you going to tell me what you did in the
23            Navy in response to my questions?

23      A.    You know what I did in the Navy? I was a United
24            States sailor.    That is my official job.

25      Q.    A United States sailor?

26      A.    It's what it sounds like when you're in the Navy.

27      Q.    What was your specialty?

28

Page 6 - OPINION AND ORDER

A.    My specialty varied.

Q.    Okay. Why don't you give me three of the variances.

A.    Judge's assistant, legal secretary, judge's driver. How's that?

Q.    So you worked in the legal area?

A.    Part time.

Q.    Okay.  What did you do the other part?

A.    The other time, I was in the military and I would be deployed to classified areas that I am not going to discuss because I had to swear that I would not discuss any deployments.

Q.    And what was your job?

A.    I object.  Let's move on.  The judge, last week, said this had no bearing on this.  You've already asked more than a dozen questions, some of them repeatedly.

Q.    What was your job?

A.    We're done.

Q.    What was your job?

A.    If you ask this one more time, this deposition is over.

Q.    Are you serious?

A.    I am serious.  You've asked this more than 12 times.

Q.    You haven't answered my question yet.  I'm entitled to know what your job was.

(Hollander Dep. 6:16-8:23, Aug. 7, 2013.)

     Plaintiff was similarly combative when Defendant asked about his educational background:

Q.    Did you go to high school [in Santa Fe]?

A.    No.

Page 7 - OPINION AND ORDER

1
2
3
4

Q.    Where did you go to high school?

A.    I will answer this question.  And from then on, any questions regarding education, I'm going to say the same thing Judge Hubel told you last Friday.  Which is, irrelevant.  Move on, please.

5
6

Q.    He said -- he said you didn't have to [answer] the interrogatory.  That does not mean you do not have to answer questions in the deposition.

7
8

A.    Correct.  I understand answering the questions in the deposition.  But there does get to a point where it has nothing to do with the case at hand.

9

Q.    Where did you go to high school?

10
11
12

A.    Davis, California.  That is the end of my education questions.  Everything else is listed or has been discussed before.  Can we please move on to a new issue?

13

Q.    Actually, it hasn't.  Where did you go to college, or did you?

14

A.    Can we please move on?

15

Q.    Where did you go to college, or did you?

16
17

A.    I object to this line of questioning.  This has already been discussed several times.  It's already been written.  The judge has already said move on.

18
19

Q.    Where did you go to college, if you did?  Did you go to college?

20

A.    I object to this line of questioning.

21

Q.    I understand.

22
23

A.    The judge has already said move on.  If you ask this one more time, counselor, this deposition is over.

24

Q.    You're refusing to answer whether or not you went to college?

25
26
27
28

A.    I am not refusing.  I am giving you the same answer that the judge gave you last week.  And I have already responded to several questions regarding nothing that ha[s] to do with this case.

Page 8 - OPINION AND ORDER

1 (Hollander Dep. 10:22-12:10.)

2     THE REPORTER: Excuse me.  I'm going to have to ask you
    both to speak one at a time.
3

4     Q.  Can you wait until I finish talking?

5     A.  My apologies.

6     Q.  -- before you interrupt my -- you can object.
    That's fine.  Quite frankly, I'm not sure you
7     really need to, given the fact you don't have a
    lawyer.  I suspect if I tried to use any of this
8     improperly, Judge Hubel would not let me anyway.
    But if you feel the need to object, you have that
9     right.  That does not give you the right to not
    answer the question, however, okay?

10     . . . .

11     A.  You know, thinking that I don't have to answer or
    don't have to do something because I don't have an
12     attorney is wrong way of thinking, considering I've
    kicked your ass for two years without an attorney.
13

14 (Hollander Dep. 12:24-14:9.)

15     Lastly, Defendant's counsel attempted to ask Plaintiff

16 questions regarding the contents of the General Judgment of

17 Dissolution of Marriage entered by the Columbia County Circuit on

18 September 28, 2011, which states: "Wife shall have sole legal

19 custody of [the Hollander children] subject to the following terms

20 and conditions . . . Husband shall [have] no parenting time with

21 the children until further order of the court, Husband having

22 failed to follow the court's previous orders regarding his

23 parenting time herein.  Any resumption of parenting time shall only

24 happen after Husband has undergone a psychological evaluation

25 approved by the court." (Edenhofer Decl. Ex. 3 at 4.)  Plaintiff

26 refused to answer questions about the judgment and walked out of

27

28

Page 9 - OPINION AND ORDER

his deposition after thirty-eight minutes (*e.g.,* at 9:08 a.m. on August 7, 2013).

On August 13, 2013, Plaintiff filed a motion to terminate or limit his deposition in light of the "bad faith behavior" of Defendant's counsel.   Eight days later, on August 21, 2013, Defendant's counsel sent Plaintiff a letter concerning his medical records.    Enclosed with that letter were eight blank medical release forms and a draft stipulated protective order for Plaintiff's review and signature.   Plaintiff responded by email on August 23, 2013, stating:

> You're kidding yourself if you think I would sign such a BS document! According to you, nothing is confidential, as you've listed every person, every employee, agent, representative or anyone else related in any way at all to anything anywhere as being 'okay' to view these documents.
>
> The court ordered that I produce these documents when you provide the appropriate protective order.   This is not even close.  If you'd like to call the Judge, please feel free to.   I'm sure he'll agree that its [sic] not much of a protective order, when you let everyone and their mother have access.
>
> I offered to sign a release weeks ago, not only did you NOT produce any paperwork, but you went ahead and requested confidential medical information anyway, so please . . . call the Judge, I'm sure he will (as usual) not be happy with you.

(Edenhofer Decl. Ex. 5 at 1.)

On August 27, 2013, Defendant's counsel sent Plaintiff an email in attempt to set up a telephone conferral regarding "a couple of issues . . . concerning the case." (Edenhofer Decl. Ex. 6 at 1.)  After not receiving a response from Plaintiff, Defendant sent another email on August 28, 2013, indicating, among other things, that Defendant planned on filing a motion to extend the

Page 10 - OPINION AND ORDER

1  deadline for responding to Plaintiff's motion for summary judgment,

2  as well as a motion to dismiss for failure to prosecute and failure

3  comply with the Court's orders.  The next day, Defendant filed its

4  motion for an extension of time.  Plaintiff never filed a

5  substantive response.

6      On August 31, 2013, Plaintiff sent an email to Defendant's

7  counsel, stating:

> You've had two months to explain why you did not have a
> valid court order, (plaintiff's MSJ); you've already
> added six months to this case, and you really think that
> the court is going to give you another?
>
> The Judge warned you in January not to waste time, and
> waste time is all you apparently know how to do.
>
> You get upset if I will not return a phone call in 48
> hours, but it takes you three months to explain why your
> client lacks a valid court order.  You can take 2
> vacations in 4 months, but I can't be gone for 4 days
> (and they were days you specifically asked several
> questions about during the deposition, so you . . .
> obviously knew I was not going to be around).
>
> Unless you actually want to take this case seriously, do
> not contact me ever again.  Everything so far has been a
> joke, and you the court jester.
>
> If I'm wrong, then you would actually try to do something
> OTHER than ask for more time.  Its [sic] the only thing
> you know how to do.  Vacation [and] ask for more time.
>
> Go be the fool in someone else's case, cause you're [sic]
> client is GUILTY, and you know it.  Do not call me ever
> again, unless it is to admit the FACT that you are
> guilty.

(Edenhofer Decl. Ex. 8 at 1.)  On September 2, 2013, Defendant's

counsel sent another email to Plaintiff requesting that they confer

by telephone prior to the anticipated filing of Defendant's motion

to dismiss.  Three days later, on September 5, 2013, Defendant

filed its motion to dismiss for failure to prosecute, failure to

Page 11 - OPINION AND ORDER

1  comply with the Court's orders, and failure to attend a deposition.
2  Again, Plaintiff never filed a substantive response.

3      On September 11, 2013, it was brought to the Court's attention
4  that there was dispute between the parties as to the terms of the
5  proposed protective order.  A telephone hearing was originally set
6  for September 17, 2013, but on the morning of the hearing,
7  Plaintiff notified the Court that he needed to seek urgent
8  treatment for his medical condition and would be unable to attend.
9  Although the Court reset the hearing October 7, 2013, once again,
10 Plaintiff contacted the Court on that morning of the hearing and
11 indicated that he would be unable to attend.  All attempts by the
12 Court to communicate with Plaintiff regarding a new hearing date
13 were unsuccessful.

14     As a result, on October 22, 2013, the Court entered an order
15 that: (1) informed the parties the Court would address the dispute
16 regarding the terms of the protective order at the October 30, 2013
17 hearing on Plaintiff's motion to terminate or limit his deposition,
18 Defendant's motion for an extension of time, and Defendant's motion
19 to dismiss; (2) required Plaintiff to confirm, by October 25, 2013,
20 at 4:00 p.m., that he was medically able to attend that hearing and
21 address the reasonably prompt prosecution of his claims from this
22 point forward; and (3) warned Plaintiff that, if he failed to
23 attend the October 30, 2013 hearing, he should be prepared for the
24 Court to schedule a hearing to show cause why this case should not
25 be dismissed for lack of prosecution.

26     On October 24, 2013, Plaintiff sent the Court's courtroom
27 deputy an email, stating, among other things: "I will send notice
28

Page 12 - OPINION AND ORDER

to the court, in writing, that I will be able to attend the hearing scheduled for October 30 at 10:00 a.m." Plaintiff never sent a formal written notice. Then, on October 29, 2013, at 9:57 p.m., Plaintiff sent another email to the courtroom deputy, stating, among other things: "Dear Jude [sic] Hubel, I will not be able to appear in person tomorrow for the October 30, 2013 hearing, as I am still very sick with an upper respiratory infection. . . . My only option for this hearing is to appear via telephone."

On October 30, 2013, prior to the 10:00 a.m. hearing, the Court informed the parties that it would conduct the hearing by telephone rather than in person to accommodate Plaintiff. The courtroom deputy initiated the call and was able to contact Defendant's counsel and place him on hold. Over the course of the next ten minutes, the courtroom deputy made several unsuccessful attempts to contact Plaintiff via the telephone number listed for Plaintiff on the District of Oregon's electronic filing system, a telephone number provided by Defendant's counsel, and email. When the courtroom deputy called Plaintiff's telephone number listed with CM/ECF, it rang but then immediately disconnected. An email was sent at 10:02 a.m. to Plaintiff, (see attached Ex. 1), advising him of this and asking him for a reply and another phone number. No reply ever came on October 30, nor has one as of the entry of this order.

Several more calls produced the same result. At 10:10 a.m., the Court obtained another phone number for Plaintiff from Defendant's counsel. When the courtroom deputy called that phone number, it went immediately to voice mail and a message indicated

Page 13 - OPINION AND ORDER

1   this voice mailbox had not been set up and could not take a
2   message.  The Court detailed the history leading up to the hearing
3   on October 30 including Plaintiff's actions on the record, with a
4   stenographer present.

## II. DISCUSSION

6       Prior to addressing the merits of the pending motions, the
7   Court must clarify a few factual matters that Plaintiff misstated
8   during his deposition as set out above.  First, and contrary to
9   Plaintiff's assertion, the Court never told Defendant's counsel to
10  "move on" when it came to Plaintiff's educational background, nor
11  did the Court say that it was "irrelevant" to this case.  Rather,
12  at the August 2, 2013 hearing, the Court stated: "I'm not going to
13  require [Plaintiff] to list [out his schools in response to
14  Interrogatory No. 3].  You can -- to the extent you think it's
15  important information, you can ask him in his deposition.  And, you
16  know, to the extent you remember that, that information, and can
17  provide it in your deposition, you'll have to do that, Mr.
18  Hollander.  I think it's a waste of their time, but if that's how
19  they want to use their time, that's their problem."   (Hr'g Tr.
20  71:25-72:7.)

21      Second, during Plaintiff's deposition Defendant's counsel
22  asked when he would receive the medical records the Court ordered
23  be produced.  Plaintiff responded by stating: "I will provide the
24  medical records, as the Court said, when you send me the paperwork
25  showing what the records are that you need, who's going to see it,
26  what they are.  And it has to be signed and notarized by everybody
27  swearing to the fact that they're going to be receiving

28

Page 14 - OPINION AND ORDER

confidential medical information." (Hollander Dep. 33:19-25.) This is completely inaccurate.    As discussed above, Plaintiff unequivocally stated during the August 2, 2013 hearing that his medical records were immediately available electronically and he would produce them prior to the date of his deposition.    Plaintiff also clearly stated he did not want to sign releases, but preferred to gather the records himself to give to Defendant's lawyers. Clearly Plaintiff has not, to date, complied with the Court's orders or acted in accordance with his representations to the Court.

With that said, the Court now turns to the merits of the pending motions.    Plaintiff moves, pursuant to Federal Rule of Civil Procedure ("Rule") 30(d)(3), to limit or terminate his deposition.    Rule 30(d)(3) states: "At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." FED. R. CIV. P. 30(d)(3).    Such a "motion may be filed in the court where the action is pending or the deposition is being taken." Id.

The Court has reviewed the transcript from Plaintiff's thirty-eight minute deposition.    The transcript contains absolutely no basis for limiting or terminating Plaintiff's deposition.    In fact, in the Court's view, it was Plaintiff, not Defendant's counsel, who acted out of line, misstated the Court's orders, and impeded the prompt resolution of this case.    Plaintiff's motion to terminate or limit his deposition is therefore denied.

Page 15 - OPINION AND ORDER

In light of the inadequate testimony provided by Plaintiff during his deposition, it is evident that the Court must extend the deadline for responding to Plaintiff's motion for summary judgment. Indeed, at the August 2, 2013 hearing, the Court explained to Plaintiff that his deposition had to occur prior to Defendant's response deadline: "Well, you have a pending motion for summary judgment that you want them to respond to, and they're entitled to your deposition before they respond to it, so I'm not going to require their response until two weeks after your deposition is taken at the earliest." (Hr'g Tr. 98:8-12.)   Accordingly, Defendant's motion for an extension of time is granted.

Defendant also moves, pursuant to Rules 37(b), 37(d) and 41(b), to dismiss Plaintiff's second amended complaint for failure to prosecute, failure to comply with a court order, and failure to attend a deposition.[2]   Rule 37(b) provides that if a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders [which] may include . . . dismissing the action or proceeding in whole or in part." FED. R. CIV. P. 37(b)(2)(A).   Similarly, Rule 37(d) states that a court may dismiss an action or proceeding in whole or in part if "a party . . . fails, after being served with proper notice, to appear for that person's deposition." FED. R. CIV. P. 37(d)(1)(A).

---

[2] Rule 41(b) provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." FED. R. CIV. P. 41(b).

1    "A district court should consider five factors before imposing
2    the sanction of dismissal: (1) the public's interest in expeditious
3    resolution of litigation; (2) the court's need to manage its
4    docket; (3) the risk of prejudice to the defendants; (4) the public
5    policy favoring disposition of cases on their merits; and (5) the
6    availability of less drastic sanctions." *Rio Properties, Inc. v.*
7    *Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002). "[T]he
8    key factors are prejudice and availability of lesser sanctions."
9    *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). "[T]he
10   district court must also determine that the violations of discovery
11   orders were due to the willfulness, bad faith, or fault of the
12   party." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994).
13       In considering the availability of lesser sanctions, one of
14   the two "key factors," "a district court must: (1) discuss the
15   feasibility of less drastic sanctions and explain why alternative
16   sanctions would be inappropriate; (2) if possible, implement
17   alternative sanctions before ordering dismissal; and (3) warn the
18   party of the possibility of dismissal before actually ordering it."
19   *Stephens v. Nike, Inc.*, No. 3:11-cv-00736-HU, 2012 WL 1801832, at
20   *1 (D. Or. May 17, 2012) (citing *Hyde*, 24 F.3d at 1167)). To date,
21   the Court has not implemented lesser sanctions or warned Plaintiff
22   of the possibility of dismissal. The most appropriate course of
23   action, then, is to stay the Court's ruling on Defendant's motion
24   to dismiss and provide Plaintiff with a warning.
25       Let there be no mistake on Plaintiff's part, this opinion is
26   a warning that this case will be dismissed if he fails to: (1)
27   conduct himself in a civil and courteous manner in his dealings
28

Page 17 - OPINION AND ORDER

with Defendant's counsel; (2) comply with the Court's orders; (3) act in accordance with representations he makes and has made to the Court; or (4) cooperate with Defendant's counsel in the course of discovery, including the taking of his deposition and answering Defendant's counsel's questions.  In the event a further sanction is ultimately deemed appropriate, the Court will either dismiss this action with prejudice, dismiss this action without prejudice, or stay the proceeding pending resolution of Plaintiff's health problems.

Plaintiff will be required to sit for a deposition that will take place in the mediation room on the ninth floor of the Hatfield Courthouse, located at 1000 Southwest Third Avenue in Portland, Oregon.  By November 12, 2013, at 12:00 p.m., Plaintiff will need to confirm, in writing, to the Court and Defendant's lawyers whether he plans on appearing in person for his deposition.  A telephone scheduling conference will be held on November 13, 2013, at 1:30 p.m., to set the date of Plaintiff's deposition, as well as a date for oral argument on Plaintiff's motion for summary judgment.  Defendant's brief in response to Plaintiff's motion for summary judgment will be due three weeks after the date of Plaintiff's deposition, and Plaintiff's reply brief will be due two weeks after Defendant's response.

Also by November 12, 2013, at 12:00 p.m., Plaintiff must produce (1) all records substantiating any other expenses, economic or special damages, for which Plaintiff contends Defendant is liable for the period of January 1, 2010, through the present (e.g., the period for which Plaintiff claims damages); and (2) all

Page 18 - OPINION AND ORDER

records relating to any counseling or psychological therapy of any type sought by Plaintiff for the period of January 1, 2008, through the present.    (Def.'s First Req. Produc. Docs. at 3; Hr'g Tr. 16:12-18:19, 54:8-55:22, Aug. 2, 2013.)[3]    The medical records produced by Plaintiff will be for Defendant's counsels' (Mr. Kraemer and Ms. Edenhofer) eyes only until further order of the Court.    A separately filed protective order, put in place by the Court, will include the same restriction.

Additionally, the Court wishes to make a few very brief comments about Plaintiff's thirty-eight minute deposition.    The Court does not have the benefit of Plaintiff's inflection, manner and tone in judging his deposition testimony.    But overall it seems apparent that Plaintiff was quite hostile and disrespectful towards Defendant's counsel.    That type of conduct is unnecessary and, going forward, it will not be tolerated by this Court.

Last, Plaintiff has failed to appear for three hearings and been more than a little obstructive in his approach to this case over the last several months.    The Court warned Plaintiff that, if he failed to attend the October 30 hearing, he should expect a show cause order requiring him to demonstrate why this case should not be dismissed.    The Court has clearly set forth what Plaintiff must do to proceed with his case in this order.    If he fails to do any part of what is ordered here without obtaining permission in writing from the Court at least twenty-four hours in advance, a

---

[3] During the August 2, 2013 hearing, Plaintiff represented to the Court that these records were easily accessible via the Oregon Health Sciences University's website and would be provided to Defendant's "very, very soon." (Hr'g Tr. 104:23-24.)

1 hearing will be promptly scheduled on Defendant's motion to dismiss
2 (Docket No. 75) and Plaintiff will be required to file his
3 arguments against dismissal in writing seven business days before
4 that hearing and attend that hearing.  If Plaintiff's explanation
5 for failing to follow this court order is not satisfactory, his
6 case will be dismissed either with or without prejudice, whichever
7 the facts support at that time.

### III.  CONCLUSION

9       For the reasons stated, Plaintiff's motion (Docket No. 69) to
10 limit or terminate his deposition is denied, Defendant's motion
11 (Docket No. 71) to enlarge the time in which to respond to
12 Plaintiff's motion for summary judgment is granted, and Defendant's
13 motion (Docket No. 75) to dismiss Plaintiff's second amended
14 complaint is stayed.

15       IT IS SO ORDERED.

16       Dated this **31ˢᵗ** day of October, 2013.

DENNIS J. HUBEL
United States Magistrate Judge

Page 20 - OPINION AND ORDER



### Re: CV 11-1200-HU Hollander v. Rainier School District 📄
Kathleen Bartholomew  to: J H                                          10/30/2013 10:02 AM

Mr. Hollander - when I call your phone number it automatically disconnects - (503) 308-7056.  Is there an alternate number?  Please reply asap.  thanks.

| J H | Dear Jude Hubel, I will not be able to appear in... | 10/29/2013 09:57:07 PM |
|---|---|---|

| | |
|---|---|
| From: | J H <jehollander@gmail.com> |
| To: | "Kathleen_Bartholomew@ord.uscourts.gov" <kathleen_bartholomew@ord.uscourts.gov>, Leslie Edenhofer <LAE@hartwagner.com>, |
| Date: | 10/29/2013 09:57 PM |
| Subject: | Re: CV 11-1200-HU Hollander v. Rainier School District |

Dear Jude Hubel,

I will not be able to appear in person tomorrow for the October 30, 2013 hearing, as I am still very sick with an upper respiratory infection.  As much as I wish I was not, I am on 100% permanent disability due to Cancer, and right now, there are enough people walking around with colds, that every time I leave the house I end up with a fever later on that night.  Its reached the point where I've stopped leaving my house, with the hopes that solitude would aid in my recovery.

My only option for this hearing, is to appear via telephone.  My sincerest apologies to the court, and all other parties for any inconvenience this causes, but spend 20 seconds next to me while I'm coughing, and you will not want to be in the same room with me for 60 minutes.

Again, my apologies to everyone for any inconvenience this causes.  I am an open & friendly person when it comes to sharing, but pneumonia is something I think I'll keep to myself.


Respectfully,


Jonathan Hollander, plaintiff



On Tue, Oct 22, 2013 at 10:39 AM,  <kathleen_bartholomew@ord.uscourts.gov> wrote:
Mr. Hollander:

Attached please find a very time sensitive opinion and order just entered in this case.  I am also sending a copy of the order to you via fed ex, which you should have by the end of the day tomorrow.  Please acknowledge your receipt of this e-mail via reply.

Thank you.

Exhibit 1